**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOHNNY MACIAS, | No. CV 15-3711-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 17, 2015, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on June 11, 2015, and July 6, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 14, 2016, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 28, 1968.  [Administrative Record ("AR") at 113.]  He has past relevant work experience in the combination job of tractor trailer truck driver and material handler.  [AR at 14, 37-38.]

On December 28, 2011, plaintiff protectively filed an application for a period of disability and DIB alleging that he has been unable to work since September 24, 2007.  [AR at 12, 113-14.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 12, 80-81.]  A hearing was held on November 13, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 12, 25-57.]  A vocational expert ("VE") also testified.  [AR at 37-41, 45-47, 52-55.]  On November 19, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from September 24, 2007, the alleged onset date, through November 19, 2013, the date of the decision.  [AR at 12-16.]  Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8.]  When the Appeals Council denied plaintiff's request for review on March 31, 2015 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability

1  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

2  If the claimant has a "severe" impairment or combination of impairments, the third step requires

3  the Commissioner to determine whether the impairment or combination of impairments meets or

4  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

5  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If

6  the claimant's impairment or combination of impairments does not meet or equal an impairment

7  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

8  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

9  and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

10  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

11  case of disability is established.  Id.  The Commissioner then bears the burden of establishing

12  that the claimant is not disabled, because he can perform other substantial gainful work available

13  in the national economy.  Id.  The determination of this issue comprises the fifth and final step

14  in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin,

15  966 F.2d at 1257.

16

17  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

18          At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity "since

19  2008, although his alleged onset date of disability inexplicably is September 24, 2007."[1]  [AR at

20  13.]  At step two, the ALJ concluded that plaintiff has "severe . . . musculoskeletal impairments."

21  [Id.]  He did not describe in any detail which portion or portions of plaintiff's musculoskeletal

22  system he found to be severely impaired:  i.e., neck, shoulder(s), elbow(s), wrist(s), hand(s),

23  hip(s), knee(s), ankle(s), feet, or some other.  At step three, the ALJ determined that plaintiff does

24  _____

25          [1]    The ALJ noted that plaintiff earned $14,248.72 in 2008 -- above the substantial gainful activity

26  level, "meaning that he was not 'disabled' at step one from the alleged onset date of disability through
    2008."  [AR at 13.]  Plaintiff also testified that he "tried" two driving jobs in 2013 but "couldn't do it"

27  because the driving "was tearing up" his knee and his back was "burning, killing me more." [AR at 51-
    52.]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act

28  through December 30, 2013.  [Id.]

1  not have an impairment or a combination of impairments that meets or medically equals any of

2  the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual

3  functional capacity ("RFC")[2] to perform a range of medium work as defined in 20 C.F.R. §

4  404.1567(c),[3] as follows:

5      [Can] lift and carry 50 pounds occasionally and 20 pounds frequently; stand and
       walk four hours total in an eight-hour workday; sit six hours in an eight-hour
6      workday; and stand and walk for an hour, but he needs to sit for 15 minutes before
       resuming standing and walking.

7

8  [Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that

9  plaintiff is unable to perform his past relevant work in the combination job of tractor trailer truck

10  driver and material handler.  [AR at 14, 37-39.]  At step five, based on plaintiff's RFC, vocational

11  factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers

12  in the national economy that plaintiff can perform, including work as a "tractor trailer truck driver"

13  (Dictionary of Occupational Titles ("DOT") No. 904.484-010), "light truck driver" (DOT No. 906.683-

14  022), "cashier II" (DOT No. 211.462-010), "counter clerk" (DOT No. 249.366-010), "charge account

15  clerk" (DOT No. 205.367-014), and "document preparer" (DOT No. 219.587-018).  [AR at 15, 39-

16  40, 45-47.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the

17  alleged onset date of September 24, 2007, through November 19, 2013, the date of the decision.

18  [AR at 15-16.]

19  /

20  /

21  /

22

23

24      [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
       limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
25     three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
       the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
26     1151 n.2 (9th Cir. 2007) (citation omitted).

27      [3]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
       carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that
28     he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he failed to articulate specific, clear and convincing reasons in rejecting plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 4.]  As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.    CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [JS at 4-11, 19-21.]

Noting that an orthopedic consultative examiner had provided the "only evidence of a functional assessment," the ALJ adopted that examiner's RFC assessment.[4]  [AR at 14.]  The ALJ stated there was "little treatment history" since plaintiff's most recent automobile accident in 2012, and found that the consultative examiner "reflects all [plaintiff's] complaints and a proper review of the record, including but not limited to [plaintiff's] surgery as well as the workers' compensation medical records and opinions from [plaintiff's workers' compensation doctors] who are not neutral medical sources and who have not treated him lately."  [Id.]  The ALJ also noted the opinion of internist Dr. Alberto Jimeno that plaintiff is disabled, and gave that statement no weight because such an opinion on disability is reserved for the Commissioner, does not provide a function-by-function analysis, is not supported by the record, and because Dr. Jimeno is not a specialist in orthopedics.  [Id.]  The ALJ then noted evidence that plaintiff had been treated by a chiropractor, which he found to be "some evidence of pain and discomfort," but found that the chiropractic treatment was "not construed as a functional analysis," and more weight "is given to the functional

---

[4]    However, the consultative examiner specifically found that plaintiff can stand and/or walk four hours in an eight-hour workday with changes in position and normal breaks, "*[w]ith a knee brace.*"  [AR at 606.]  Although the ALJ states that he "adopts" the RFC assessment of the consultative examiner, the ALJ does not state why he failed to include that seemingly significant need for an assistive device in his RFC finding.  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (while an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected).

1  discussion of acceptable medical sources,"[5] consisting in this case, apparently, of only the

2  discussion of the consultative examiner.  [Id.]  Finally, the ALJ stated:

3  > Several other factors erode the claimant's credibility here.  The claimant received
   > unemployment benefits after the alleged onset date of disability, so he represented

4  > that he could work during a period that he also alleges disability.  It is also significant
   > that the claimant did not file this claim until after years had elapsed from his alleged

5  > onset date.  The Administrative Law Judge therefore concludes that the consultative
   > examiner best represents the claimant's ability to function.

6

7  [Id.]

8       "To determine whether a claimant's testimony regarding subjective pain or symptoms is

9  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

10  1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

11  objective medical evidence of an underlying impairment 'which could reasonably be expected to

12  produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

13  341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may

14  reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence

15  of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart,

16  331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility

17  include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's

18  testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities;

19  (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the

20  nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v.

21  Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163

22  (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

23       Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

24  did not find "affirmative evidence" of malingering [see generally AR at 21-22], the ALJ's reasons

25  for rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775

26  _____

27     [5]    This entire discussion took up three paragraphs in half a page of the decision and contained
       no additional detail on plaintiff's medical treatment or impairments than that set forth herein.  [AR

28  at 14.]

7

F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012));

Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings [regarding a

claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible

and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting

Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently

specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony

on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"

Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).  A "reviewing court should

not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's

allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a

plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir.

1990) (per curiam).

> At the first step, although the ALJ did not expressly make a determination, the ALJ

presumably found that plaintiff's medically determinable impairments could reasonably be

expected to cause the symptoms alleged.  [AR at 14.]  At the second step, because the ALJ did

not find any evidence of malingering, the ALJ was required to provide specific, clear and

convincing reasons for discounting plaintiff's credibility.  Burrell, 775 F.3d at 1136.  "General

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  Lester v. Chater, 81 F.3d 821, 834 (9th

Cir.1995).

> The ALJ's credibility determination in this case was not legally sufficient.  First, the ALJ

relied on plaintiff's receipt of unemployment benefits as evidence that plaintiff "represented that

he could work during a period that he also alleges disability."  [AR at 14.]  The Court acknowledges

that a claimant's receipt of unemployment benefits could be a legally sufficient reason to find a

claimant not credible if the claimant considered himself capable of work and held himself out as

available for work.  See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (that the claimant

received unemployment insurance benefits was one of several reasons given by the ALJ for

finding plaintiff not credible); but see Webb v. Barnhart, 433 F.3d 683, 687-88 (9th Cir. 2005)

1  (rejecting as a basis for finding a claimant not credible the claimant's having sought employment
2  during the relevant period as it show the claimant "was doing his utmost, in spite of his health, to
3  support himself").  However, a claimant's receipt of unemployment benefits does not necessarily
4  constitute a legally sufficient reason for an adverse credibility determination when the record "does
5  not establish whether [the claimant] held himself out as available for full-time or part-time work."
6  Carmickle, 533 F.3d at 1161-62. The Ninth Circuit recently stated that "*continued* receipt" of
7  unemployment benefits casts doubt on a claim of disability, but the receipt of some unemployment
8  benefits, followed by the subsequent refusal of unemployment benefits, actually supports a claim
9  of disability.  Ghanim, 763 F.3d at 1165 (emphasis added).

10         Here, although the record contains evidence that plaintiff received unemployment benefits
11  after the alleged onset date [see AR at 121], the record does not establish whether plaintiff
12  claimed he was available for full-time or part-time work, and the ALJ never asked him any
13  questions about this at the hearing.[6]  In addition, the record does not show whether plaintiff ever
14  declined unemployment benefits.  Accordingly, the Court finds that the evidence in the record that
15  plaintiff was receiving unemployment benefits for a period of time in 2011 did not give rise to a
16  legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility
17  determination.  See, e.g., Lind v. Colvin, 2015 WL 1863313, at *4 (C.D. Cal. Apr. 23, 2015);
18  Plummer v. Colvin, 2014 WL 7150682, at *16 (D. Az. Dec. 16, 2014) (claimant's receipt of
19  unemployment benefits was not clear and convincing reason for ALJ's adverse credibility
20  determination where the record did not contain the unemployment benefits application or establish
21  the manner in which claimant held herself out as available for work in completing any such
22  application); Wood v. Colvin, 2014 WL 4407719, at *9 (E.D. Wash. Sept. 8, 2014) (same, where
23  record contained no certification by claimant that he was physically and mentally able to work
24  full-time); Miller v. Colvin, 2014 WL 1873276, at *4 (C.D. Cal. May 9, 2014) (same, where there
25  was no indication whether claimant based her claim for unemployment benefits on full-time or

26

27  ───────────────

28         [6]    In California, an individual can receive unemployment benefits if he is available for part-time
work. Cal. Unemp. Ins. Code § 1253.8.

9

1   part-time work); <u>Ellis v. Astrue</u>, 2011 WL 5025839, at *5-6 (D. Or. Oct. 20, 2011) (same, where

2   record did not contain claimant's unemployment benefits application).  Accordingly, this was not

3   a specific, clear and convincing reason to discount plaintiff's subjective symptom statements.

4        The ALJ also stated that plaintiff's credibility was "eroded" because he did not apply for

5   disability benefits "until after years had elapsed from his alleged onset date." [AR at 14.]  Again,

6   the ALJ did not question plaintiff about this "gap" during the hearing.  Neither did the ALJ provide

7   any explanation as to any connection between the lapse in time and plaintiff's credibility.

8   Accordingly, this was not a specific, clear and convincing reason to discount plaintiff's subjective

9   symptom statements.

10       Finally, the ALJ's "conclusion" that the "consultative examiner best represents [plaintiff's]

11  ability to function" [AR at 14], although included in the same paragraph describing the "facts" that

12  erode plaintiff's credibility, appears to have no logical connection to plaintiff's credibility.  [AR at

13  14, 602-06.]   In fact, the consultative examiner's assessment does not consider plaintiff's

14  subjective statements in any detail [<u>see</u> AR at 602-06]; neither does the ALJ describe the

15  consultative examiner's RFC assessment in any detail.  [<u>See</u>, <u>e.g.</u>, AR at 14.]  Accordingly, this

16  was not a specific, clear and convincing reason to discount plaintiff's subjective symptom

17  statements.

18       Based on the foregoing, the ALJ's credibility determination was not "sufficiently specific,"

19  clear and convincing, to allow this Court to conclude that the ALJ rejected plaintiff's testimony on

20  permissible grounds and did not arbitrarily discredit his subjective symptom testimony.  <u>Brown-</u>

21  <u>Hunter</u>, 806 F.3d at 493 (quoting <u>Bunnell</u>, 947 F.2d at 345-46).  Remand is warranted on this

22  issue.

23

24  **B.    REMAND FOR FURTHER PROCEEDINGS**

25       The Court has discretion to remand or reverse and award benefits.  <u>McAllister v. Sullivan</u>,

26  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

27  proceedings, or where the record has been fully developed, it is appropriate to exercise this

28  discretion to direct an immediate award of benefits.  <u>See Lingenfelter v. Astrue</u>, 504 F.3d 1028,

1   1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are

2   outstanding issues that must be resolved before a determination can be made, and it is not clear

3   from the record that the ALJ would be required to find plaintiff disabled if all the evidence were

4   properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

5          In this case, there are outstanding issues that must be resolved before a final determination

6   can be made.  In an effort to expedite these proceedings and to avoid any confusion or

7   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

8   proceedings.  First, the ALJ on remand shall provide specific findings as to the nature of plaintiff's

9   musculoskeletal impairments.  Second, because the ALJ failed to provide specific, clear and

10  convincing reasons, supported by substantial evidence in the case record, for discounting

11  plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective

12  allegations and either credit his testimony as true, or provide specific, clear and convincing

13  reasons, supported by substantial evidence in the case record, for discounting or rejecting any

14  testimony.  Finally, the ALJ shall reassess plaintiff's RFC and determine at step five, with the

15  assistance of a VE if necessary, whether there are jobs existing in significant numbers in the

16  national economy that plaintiff can still perform.[7]

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26

27

28  _____

[7]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

## VI.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  March 21, 2016

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

12